359 So.2d 1031 (1978)
CITY STORES COMPANY (MAISON BLANCHE DIVISION)
v.
GERVAIS F. FAVROT CO., INC.
No. 8313.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
*1032 Guste, Barnett & Shushan, William M. Barnett, New Orleans, for plaintiff-appellant.
Baldwin, Haspel, Molony, Rainold & Meyer, Robert R. Rainold, New Orleans, and Smith, Currie & Hancock, Bert R. Oastler and Frank E. Riggs, Jr., Atlanta, Ga., for defendant-appellee.
Before STOULIG, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is an appeal from a judgment homologating, with minor amendment, an award of an arbitration panel determining amounts due on three building contracts to the contractor, Gervais F. Favrot Co., Inc., from the owner, City Stores Company.
The parties entered into three construction contracts involving a warehouse and retail store in the City of New Orleans. The first contract was executed on March 8, 1972 and covered construction of the building and an area up to 5 feet from its outside perimeter. On August 17, 1972, the parties executed a second contract for performance of site work on the facility, much of which had been completed on the date of execution. On June 1, 1973 the parties confected a third contract for work already completely performed on an additional site, called "Parcel Q" which had been acquired subsequent to the first agreement. The second and third contracts incorporated by reference the General Conditions and Specifications of the first contract. However, the first contract obviously did not refer to the other two, nor was it amended to incorporate their provisions by reference.
The contracts were based on a "cost plus" method of payment with a guaranteed maximum price, subject to cost increases occasioned by work changes initiated by the owner during construction. The construction employed the "fast track" method, used for speed of beginning and completion and, in theory, for economy. When this method is used, the owner supplies the contractor initially with uncompleted contract drawings and specifications, upon which the contractor is entitled to rely, and the obligation is placed on the owner to complete the drawings and specifications in a manner consistent with the initial documents, used by the contractor to begin construction.
The basic dispute between the parties arose around the claims of the contractor beyond the contract price and whether the project should be considered as one overall project or three separate projects.
The owner contended the contractor failed to keep its cost records separate on the three contracts and co-mingled its expenditures in spite of the owner's request for separate billings. The contractor allegedly submitted claims for cost overruns which fluctuated from $145,000 to $580,000 and failed to provide adequate supporting data to allow the project architect to issue a certificate of payment in accordance with *1033 the contract documents. Between 75 and 100 separate work items were involved in the contractor's claim.
The contractor contended the later drawings and specifications submitted by the owner contained numerous changes, additions, and deletions from the original documents furnished it, and that it was requested to forego formal change orders in favor of a determination of all amounts due for extra work at the conclusion of construction.
After numerous conferences between the owner's architect and representatives and the contractor's representatives, the parties were unable to resolve their dispute. The contractor then filed a formal demand for arbitration with the American Arbitration Association pursuant to a contractual arbitration clause. The demand requested arbitration under the first contract dated March 8, 1972, but the "Claim for an Equitable Adjustment" presented to the arbitrators October 15, 1974 contained all of the claims for the entire project. The owner answered these claims and presented some of its own, and timely objected to the arbitration procedure. The arbitrators eventually made an award based on work performed on the entire project under all three contracts.
Before the arbitration hearing started, the owner filed a declaratory judgment suit in the district court alleging the disputes between it and the contractor were not arbitrable in nature and requested injunctive relief. The district court denied a preliminary injunction, and this court affirmed because the preliminary injunction question became moot when the arbitration proceeding was completed prior to the hearing of the preliminary injunction question in this court.[1] This court stated there was sufficient evidence to support the trial court's finding the contract between the parties contained an arbitration clause, but made no decision on the question of arbitrability of the dispute. After deciding the narrow issue of the moot request for a preliminary injunction, the case was remanded for further proceedings. The issue of arbitrability remains undecided.
After the arbitration award in favor of the contractor was rendered, the owner then filed this suit in which this appeal has been taken to modify, correct or vacate the award of the arbitration panel. R.S. 9:4210 and 4211. This has created a procedural issue. This proceeding was allotted to another division of the trial court, and it was not consolidated with the first proceeding. A trial date was set, but the trial judge set it aside on his own motion. The matter was reset for hearing approximately 6 months later, still without benefit of a decision on the question of arbitrability. The trial court then proceeded to hear the matter, modified the arbitrator's award on the date from which the interest began to run, and homologated the award as thus amended. The owner has appealed from that judgment and the contractor has filed an answer to that appeal.
We first proceed to the determination of the procedural issue. The appellant contends that the trial court erred in failing to vacate, correct or modify the award of the arbitration panel because the award was made prior to a final determination of the arbitrability of the matters upon which the panel acted, and that the question of arbitrability is still pending trial in the first suit between these parties. It should be noted that the first suit was not brought under the provisions of R.S. 9:4203 where a party aggrieved by the refusal of another to perform under a written agreement for arbitration may petition the court for an order directing that the arbitration proceed, nor was it the type of proceeding encompassed in R.S. 9:4202. The first suit was a declaratory judgment suit brought by the owner seeking to declare what issues are subject to arbitration, and contained within it ancillary proceedings for a preliminary and permanent injunction to prevent arbitration. *1034 The owner was refused a preliminary injunction to enjoin arbitration, and on appeal to this court, the matter of a preliminary injunction was declared moot because arbitration had already concluded. As far as the record on this appeal shows, the merits of that case have never been determined, and we cannot see any sound basis for concluding that this untried case should stop all proceedings conducted within the provisions of the Louisiana Arbitration Law.
In effect, what appellant is urging is that although he has been refused a preliminary injunction to stop the arbitration proceedings from going forward, nevertheless because the merits of that case have not been tried, it acts as an automatic injunction which would prevent the arbitration award from becoming effective. We have already noted that the trial judge below continued the present case for the purpose of affording a determination in the first case, and none apparently was forthcoming. This lack of action certainly cannot be granted the same effect as the preliminary injunction sought for and denied therein.
The Louisiana Arbitration Law provides a remedy to solve such a procedural difficulty. R.S. 9:4210 permits an aggrieved party to apply to the court for an order vacating the award under Subsection (C) when the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or of other prejudicial misbehavior or under Subsection (D) where the arbitrators exceeded their powers. Additionally the following section, § 4211, provides for an order modifying or correcting awards under Subsection (B) where the arbitrators have awarded upon a matter not submitted to them. A reference to the pleadings in this case shows that the issue of arbitrability was put at issue in plaintiff's petition, and in view of those pleadings and the applicable law referred to above, we cannot see any relevancy to the pendency of that first suit concerning arbitrability. If we were to consider this issue under any other theory, we would defeat the expeditious resolution of disputes by arbitration which is the primary goal of the Louisiana Arbitration Law.
A related issue to this procedural issue is whether the arbitration panel exceeded its authority in arbitrating upon all matters concerning the entire project, or should it have been restricted only to those claims which arose under the primary contract dated March 8, 1972 as distinguished from the later two contractual documents involving site work and work on "Parcel Q." Since the original demand for arbitration only mentioned that first contract, the owner contends that arbitration should have been restricted only to that contract, and claims arising under the other contracts or arising as a result of extra work could not be considered by the arbitration panel.
We do not consider the simple demand for arbitration to be controlling of the matters placed before that body. The formal document presented in connection with that letter of demand was a document of many pages detailing the entire relationship between the parties with specificity and pointing out, depending upon groupings and subgroupings, some one hundred claims. The owner, although objecting, responded with answers to these claims and put forward claims on its own. It is apparent from the record the reason why the contractor initially mentioned only the first contract, was because it considered as the work progressed under the scheme agreed to by the parties that the work on the original contract encompassed some of the site work necessary and that the subsequent "Parcel Q" work arose naturally out of the method of procedure agreed upon. It is noted that the site work was considerably accomplished during the existence of the work on the prime contract and prior to the formalized signing of the second contract. The work on "Parcel Q" was actually completed some 2 months prior to the signing of that formal contract. The testimony of the witnesses produced by the contractor shows that the contractor treated these 3 contracts as simply one project. The testimony of the members of the arbitration panel shows that all of the matters were considered by them and that the 3 different *1035 contracts were considered as a group or as one project. Each item was vigorously and diligently contested by the owner and there is no complaint of lack of time or notice such as to prejudice its defense. We agree with the position of the arbitration panel and the trial judge that the entire matter was properly before the arbitration panel, and not beyond their authority.
Appellant owner further argues to us that the trial judge erred in affirming the award because it was prevented an opportunity to determine the existence vel non of miscalculations by the arbitrators of sums allegedly due. The arbitration proceeding was taken by a court reporter, however, some time subsequent to the award, it was learned that the court reporter's notes were mistakenly destroyed, and there is no record of all of the testimony and other proceedings before the panel. At the trial in the district court, the members of the arbitration panel were produced as witnesses, and they testified as to the procedure they used in arriving at the award. The claims were taken up individually, and each arbitrator noted for his own purposes the result he felt proper on each claim. Either at the end of that day's hearing or at a later convenient time, the arbitrators held a conference in which they discussed the individual claims and arrived at a composite decision. The final award was based upon the total of these individual claims, some to be added in favor of the contractor, and some to be deleted or otherwise credited in favor of the owner. Their evidence convinces us that the amounts were checked and rechecked in consultation with each other and there is no evidence of any miscalculations.
Another issue on this appeal is the fixing of legal interest in the award. The date of the award was March 10, 1975 and the award was in favor of the contractor in the amount of $616,086.18 with legal interest from June 1, 1973. The testimony was that the June 1st date was chosen by the panel because the panel believed that beneficial occupancy of the premises occurred April 1, 1973, and assuming the contract was unrecorded, the sixty day period for filing liens would have expired on June 1. Therefore the panel reasoned the owner would have been required to pay the entire amount due. The trial court amended the award of interest decreeing it "shall be at the rate of seven (7%) percent per annum from March 10, 1975 until paid." The court reasoned that the issue of interest due was dependent upon Article 1938 of the Civil Code of Louisiana, and the sum certain that was due the contractor did not become known until March 10 when the award was made by the arbitrators. We agree with the trial judge. The nature of these contracts, and the circumstances surrounding their execution convinces us that the first date that a certain figure could be ascertained was the date of the award by the arbitrators. The record shows that there had been a number of varying demands for different amounts due, together with great difficulty in presenting supporting documents to substantiate these demands. Dependent upon the validity of these demands, both by the contractor and by the owner, and the determination that the contractor was entitled to recover beyond the price guaranteed in the contract, the owner was justified in not paying the retainage. The performance of the contract did not proceed according to the original estimates, and stretched out over a very long period of time causing a long delay in occupancy by the owner. A number of the claims involved which party should bear the additional costs of these delays. Thus it was only after the arbitration panel considered these matters and rendered an award that a sum certain could be reached. Applying C.C. Article 1938, we agree that the interest should run from March 10, 1975.
The final issue before us is the timeliness of the award of the arbitrators. Appellant points out to us that Rule 40 of the American Arbitration Association Rules provides that an award shall be made not later than 30 days from the date of the closing of the hearing. It contends that the timeliness is governed not by the date on which the award is signed, here within 30 *1036 days, but upon the date of delivery of the award to the parties as provided by Rule 44, which provides legal delivery of the award is the placing of it in the mail, which took place one day later. The record shows that the three arbitrators lived in different cities and that the formal award had been signed and forwarded to each, prior to the post-dated date of March 10, and by that date all three had signed. We conclude this is compliance with the rules and that the date of mailing is not controlling of the timeliness of the award.
For the reasons discussed above, we affirm the judgment appealed at appellant's cost.
AFFIRMED.
NOTES
[1] See City Stores Co. v. Gervais F. Favrot Co., Inc., La.App., 315 So.2d 370, writs denied, La., 320 So.2d 557.